**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **J.M.**, <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY**, <br><br> Defendant. | Civil Action No. 24-10996 (ZNQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon J.M.'s ("Plaintiff") appeal of the Social Security Administration's ("Defendant") October 30, 2023 denial of Plaintiff's request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* ("Compl.," ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. §§ 405(g) and 1383(c) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

After reviewing the parties' submissions and the Administrative Record ("AR," ECF No. 4), the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and properly within the ALJ's decision-making authority. Accordingly, the decision to deny Plaintiff DIB will be **AFFIRMED**.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

      A.      **Procedural History**

Plaintiff filed her initial claim for DIB on September 11, 2014, alleging an onset date of disability on April 19, 2013, due to dyslexia, depression, graves disease, rheumatoid arthritis, osteo arthritis, fibromyalgia, diabetes, and low back pain, among other impairments. (AR at 60–61.) This claim was denied initially and upon reconsideration. (*Id.* at 119–23, 131–33.) On October 23, 2015, Plaintiff filed a Request for Hearing before an ALJ. (*Id.* at 138–39.) The ALJ held a hearing on December 19, 2017, and thereafter denied Plaintiff's DIB claim. (*Id.* at 94–112.)

Plaintiff then sought review by the Appeals Council, which denied Plaintiff's request for review. (*Id.* at 1.) The matter was appealed to the United States District Court for the District of New Jersey. (*Id.* 924–29.) On May 31, 2020, the Honorable Michael A. Shipp affirmed the decision of the ALJ. (*Id.* at 930–43.) In so doing, Judge Shipp held that the "ALJ's step two determination, RFC determination, and evaluation of Plaintiff's pain were all supported by substantial evidence." (*Id.* at 935.)

Three weeks after Judge Shipp issued his final Order and Opinion, new counsel appeared on behalf of Plaintiff and filed a Motion to Alter or Amend Judgement under Federal Rule of Civil Procedure 59(e). (AR at 945.) In that motion, Plaintiff raised for the first time the argument that the ALJ was unconstitutionally appointed under the Appointments Clause. (*Id.*) Judge Shipp found that "on the facts of this case it would be a manifest injustice to deny Plaintiff an opportunity to raise a meritorious constitutional challenge." (*Id.* at 951.) As such, he reversed and remanded the Commissioner's final decision for further proceedings before a different, constitutionally appointed, ALJ. (*Id.*)

Following Judge Shipp's order, the Appeals Council vacated the ALJ's decision, and remanded the case back to a different, constitutionally appointed ALJ for further administrative proceedings. (*Id.* at 956.) On June 27, 2023, a different ALJ held a hearing where Plaintiff, who was represented by counsel, and an impartial vocational expert testified. (*Id.* 874–917.) That ALJ subsequently issued a decision, finding that Plaintiff was not disabled under the Social Security Act. (*Id.* at 848–65.) After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Plaintiff filed the instant appeal.

**B.     Background: ALJ Decision**

On October 30, 2023, the ALJ issued its decision. (AR at 865.) The ALJ set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 848–65.) The ALJ initially found that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2017. (*Id.* at 851.) At step one, the ALJ found that Plaintiff performed substantial gainful activity subsequent to the alleged disability onset date. (*Id.*) However, the ALJ also found that there had been a continuous 12-month period during which Plaintiff had not engaged in substantial gainful activity. (*Id.*)

At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease, rheumatoid arthritis, kidney disorder and Grave's Disease." (*Id.*) Notably, the ALJ found that Plaintiff's "medically determinable mental impairments of anxiety disorder, depressive disorder and affective disorder, considered singly and in combination, did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and were therefore non-severe." (*Id.* at 853.)

At step three, the ALJ determined that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 CFR

Part 404, Subpart P, Appendix 1. (*Id.* at 858.) The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> The claimant must be permitted to alternate between sitting and standing as needed. The claimant is able to frequently reach. She can occasionally climb ramps/stairs as well as occasionally balance on wet, moving or uneven surface and to stoop. The claimant cannot climb ladder or /scaffolds [sic]. The claimant cannot work around hazards including moving mechanical parts or unprotected heights. She must never crouch, kneel or crawl. The claimant can never work at unprotected heights. She must avoid concentrated exposure to extreme heat or extreme cold. The claimant can tolerate occasional exposure to vibration. The claimant will be off task 10% of the time (in addition to normal breaks) in an 8-hour day.

(*Id.* at 861.)

At step four, the ALJ found that, through the date last insured, Plaintiff was capable of performing past relevant work as a telephone solicitor. (*Id.* at 864.) The ALJ therefore determined that Plaintiff was not disabled under the Social Security Act at any time between April 19, 2013 through the date of the last insured, September 30, 2017.[1] (*Id.* at 865.)

## II.    SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g), which authorizes judicial review of final decisions of the Commissioner of Social Security.

## III.   LEGAL STANDARD

### A.    Standard of Review

On appeal, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). In reviewing applications for social security

---

[1] Because the ALJ found Plaintiff was not disabled at step four, the inquiry ended without any analysis of step five. *See* 20 C.F.R. § 404.1520(f).

disability benefits, the district court has the authority to conduct a plenary review of legal issues decided by the ALJ. *See Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 401 (citing *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence "may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its] own conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotations omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence in the record. *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). And "[s]ince it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason," courts require "an explanation from the ALJ of the reason why probative evidence has been rejected" to determine whether the reasons for rejection were improper. *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (citation modified).

**B.    Applicable Law**

The Social Security Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

5

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)). The analysis proceeds as follows:

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). If so, the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's RFC and analyze whether the plaintiff can perform past relevant work. *See* 20 C.F.R. § 404.1520(e). Under C.F.R. § 404.1545, a claimant's RFC is "the most [he or she] can do" despite limitations "that affect what [he or she] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. *See* 20 C.F.R. § 404.1520(f). Otherwise, the ALJ proceeds to the final step.

At step five—the final step—the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

**IV.   DISCUSSION**

Plaintiff argues that the ALJ erred in failing to find Plaintiff's mental impairments severe at step two of the sequential analysis. (Moving Br. at 11.) Plaintiff also appears to argue that the ALJ failed to consider Plaintiff's mental impairments, even if non-severe, in its RFC assessment. (*Id.* at 12.) Both arguments will be addressed below.

7

### A. The ALJ's Step Two Determination

Plaintiff argues that the ALJ erred at step two of the sequential analysis by failing to find her mental impairments as severe. (*Id.* at 11.) The ALJ found that Plaintiff's "anxiety disorder, depressive disorder and affective disorder, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe." (AR at 853.) According to Plaintiff, this determination was based on the ALJ's erroneous belief that Plaintiff was not receiving mental health treatment during the relevant period. (Moving Br. at 11.) Plaintiff argues that she has been receiving treatment from Rutgers Behavioral Health and Stress Care of NJ, LLC since October 2022. (*Id.*) Moreover, various treatment notes document Plaintiff's insomnia, anxiety, paranoid thoughts and nightmares, which Plaintiff argues demonstrate that her mental impairments were severe. (*Id.*)

As mentioned above, at step two of the five-step sequential inquiry, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 404.1520(c). An impairment is not severe if does not limit the claimant's "physical or mental ability to do basic work activities." *Id.* "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (quoting 20 C.F.R. § 140.1521(b)). The step two analysis "is a *de minimis* screening device to dispose of groundless claims." *Id.*

Contrary to Plaintiff's assertion, the ALJ engaged in a lengthy discussion of the medical record to support its findings regarding the severity of Plaintiff's mental impairments. (AR at 853–56.) The ALJ began its analysis by addressing and weighing all of the relevant evidence pertaining to Plaintiff's mental health conditions. (*Id.*) First, the ALJ discussed a July 2015 psychiatric

8

consultative examination by Dr. Rajput. (*Id.* at 853.) The ALJ noted that Plaintiff complained of feeling depressed, anxious, and poor concentration, among other things. (*Id.*) However, the ALJ stated that:

> Mental status examination revealed the claimant drove herself to this exam, was calm/cooperative, maintained good eye contact, had fair hygiene/grooming, exhibited normal motor behavior, had clear sensorium, was awake, alert and fully oriented, but had a sad mood and constricted affect. She exhibited normal speech, logical/goal-directed thought processes, could spell TABLE forward and backwards, recalled 3/3 items immediately and 2/3 after 5 minutes, had good long-term memory and abstraction, retained good insight/judgment, had no thought pattern disturbances and denied any perceptual disturbances.

(*Id.*) Although Dr. Rajput diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder, the ALJ assigned "little weight to any suggestion that [Plaintiff's] mental impairments are severe, as the record reveals minimal psychiatric treatment or psychotropic medication, with a broad range of residual daily activities and minimal findings upon mental status examination." (*Id.* at 853–54.)

Next, the ALJ discussed Plaintiff's psychiatric progress notes from 2012 to 2013, and explained that it assigned great weight to the GAF score of 70 given by psychiatrist Dr. Oh, which was indicative of only mild functional deficits, because "it is consistent with [Plaintiff's] broad range of daily activities and minimal findings upon mental status examination." (*Id.* at 854.)

The ALJ then discussed a 2014 report prepared by Dr. Pruscino, which stated that at Plaintiff's most recent office visit she was, among other positive mental indicators, alert, oriented, in a good mood, and had no memory problems. (*Id.*) However, the ALJ ultimately accorded this opinion limited weight because Dr. Pruscino had not seen Plaintiff since July 2012 and was unaware of her current medical status. (*Id.*)

9

The ALJ also discussed a November 2014 exam by Dr. Miller, at which Plaintiff performed well on a mental examination. (*Id.* at 854.) Like with Dr. Rajput's mental exam, Plaintiff was found to be alert, coherent, casually dressed, pleasant, and cooperative. (*Id.*) Plaintiff also had normal psychomotor behavior, fluent speech, made good eye contact, and was fully oriented. (*Id.*) The ALJ then noted that Dr. Miller diagnosed Plaintiff with depressive disorder, but explained that to the extent that finding could suggest Plaintiff's mental impairments were severe, the ALJ disagreed given the "little corroborating evidence" in the record. (*Id.*)

Next, the ALJ discussed a December 2014 exam by Dr. Harris, who opined that Plaintiff "had only mild restriction with activities of daily living and mild difficulties maintaining social functioning and maintaining concentration, persistence or pace." (*Id.*) This opinion was affirmed by another psychologist, Dr. Rivera. (*Id.*) The ALJ explained that it assigned great weight to these opinions, finding that they were consistent with the Plaintiff's normal mental status examinations, broad range of daily activities and minimal need for mental health treatment. (*Id.* at 855.)

Finally, the ALJ explained that it considered Plaintiff's reported daily activities. (*Id.*) As the ALJ noted, Plaintiff complained of difficulty getting up in the morning, understanding, concentrating, following spoken instructions, and limited memory. (*Id.*) However, Plaintiff admitted that she could prepare meals, complete tasks (slowly), pay bill online, shop online, drive a car, shop in stores, handle finances, get along with authority figures, and generally tolerates stress and routine changes. (*Id.*)

After discussing the record evidence, the ALJ conducted an analysis of Plaintiff's mental impairments under the four broad areas of mental functioning for evaluating mental disorders set forth in the regulations (the "paragraph B" criteria). (*Id.*) The ALJ then reviewed the four areas

and ultimately concluded that none of them caused more than a "mild" limitation and were therefore non-severe. (*Id.* 855–56.)

Given the detailed discussion and analysis regarding the severity of Plaintiff's mental impairments, the Court finds that the ALJ's determinations were supported by substantial evidence.[2]

### B.  The RFC Determination

Plaintiff argues that even if the ALJ properly found Plaintiff's mental impairments non-severe, the ALJ erred in failing to consider the impairments in the formulation of Plaintiff's RFC. (Moving Br. at 12–13.) According to Plaintiff, "[t]he fact that the RFC finding includes no mental limitations demonstrates that this was not done." (*Id.* at 12.) Defendant, in response, argues that Plaintiff ignores the ALJ's finding that Plaintiff could only perform jobs that would allow her to be off-task for 10% of the time during an eight-hour workday. (Opp. at 20.) Defendant further argues that "[b]y including such a limitation in the RFC finding, the ALJ translated her paragraph B criteria finding that Plaintiff had mild limitations in the area of concentrating, persisting, or maintaining pace into a specific mental work-related restriction." (*Id.*)

The Court agrees with Defendant. Specifically, in making this determination, the ALJ stated that it "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR at 861.) This undoubtedly includes the detailed discussion and analysis of Plaintiff's mental impairments. Notably, an ALJ's decision is not required to follow a particular format as long as the ALJ's

---

[2] Plaintiff argues that the ALJ failed to consider evidence from Rutgers Behavioral Health and Stress Care of NJ, LLC. (Moving Br. at 11; Reply at 5.) But as Plaintiff points out, those documents only confirm that "Plaintiff had been involved in the Behavioral Health Home and Outpatient Program since October 2022." (*Id.*) And "medical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue." *Turano v. Saul*, Civ. No. 18-12042, 2020 WL 472767, at *7 (D.N.J. Aug. 14, 2020) (citation omitted). Here, Plaintiff's treatment occurred several years after her date of last insured and there is no suggestion that it relates back to the relevant time-period. As such, Plaintiff's argument fails.

11

opinion as a whole permits meaningful judicial review.  *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Here, the record reflects that the ALJ relied upon "such relevant evidence as a reasonable mind might accept as adequate to support" the limitations contained in the RFC assessment.  *Richardson*, 402 U.S. at 401.  The Court, therefore, finds that the RFC assessment was supported by substantial evidence.

## V.     CONCLUSION

For the reasons stated above, the Court will **AFFIRM** the ALJ's decision to deny Plaintiff DIB.  An appropriate Order will follow.


Date: December 30, 2025

                                        s/ Zahid N. Quraishi
                                        **ZAHID N. QURAISHI**
                                        **UNITED STATES DISTRICT JUDGE**